IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL CASE NO. |
| v. | 1:14-CR-00466-WBH-JFK |
| ELMER DIAZ-ZUNIGA, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Pending before the court are Defendant Elmer Diaz-Zuniga's motion [Doc. 18] to suppress evidence and motion [Doc. 19] to dismiss the indictment for violation of the Speedy Trial Act. An evidentiary hearing was held on the motions on May 19, 2015. [Doc. 25].[1] In his post-hearing brief, based on the evidence presented at the hearing, Defendant abandoned the motion to suppress evidence. [Doc. 27 at 9-10]. Accordingly, the court recommends that the motion be denied as moot. With respect to the motion to dismiss, Defendant asserts that the Speedy Trial Act was violated due to the Government's failure to indict him within thirty days of his being taken into custody by Immigration and Customs Enforcement ("ICE") authorities on November 13, 2015. [Id. at 1-9]. The Government opposes the motion to dismiss contending that

---

[1]Citations to the transcript are: (Tr. at ).

AO 72A
(Rev.8/82)

the civil detention by ICE authorities did not trigger the running of the Speedy Trial clock. [Doc. 28].

## I. Background Facts

On November 10, 2014, the Gwinnett County Police Department conducted a safety checkpoint on Patterson Road, at Spring Drive, in Gwinnett County, Georgia. (Tr. at 2-3). The safety checkpoint was primarily established to stop each vehicle traveling on the road to verify driver's license and to check for expired tags and seatbelts. (Tr. at 3). A number of marked police vehicles were present along with uniform officers and signs posted stating either: "Police Checkpoint Ahead" or "Slow. Police Checkpoint." (Tr. at 8-9, 18).

Officer Raymond Shepard, a Gwinnett County Police Officer, worked the checkpoint and, as he was doing so, observed a yellow Ford F350, towing a trailer, approaching the checkpoint. (Tr. at 15-16, 20). Officer Shepard observed the vehicle slow and turn into a driveway before the checkpoint and then immediately begin to back out of the driveway. (Tr. at 21). The officer believed that the driver of the vehicle was attempting to avoid the checkpoint. (Tr. at 22). As the vehicle backed out of the driveway, the attached trailer impeded the flow of traffic, and the officer entered a marked police vehicle and proceeded to the location of the vehicle to speak with the

2

driver. (Tr. at 21-22). The officer spoke with the driver, Defendant Diaz-Zuniga, who did not have a drivers license, and noticed that the trailer did not have a tag. (Tr. at 23-24). The officer placed Defendant under arrest for driving without a driver's license, for failure to have a tag for the trailer and for impeding traffic, and Defendant was transported to Gwinnett County Jail. (Tr. at 24, 27).

On November 13, 2015, when Defendant was taken into custody by ICE, a Notice of Intent/Decision to Reinstate Prior Order [of Deportation] was executed by a "R. Dalton" on behalf of "L. Peralta." (Tr. at 30-31; Def. Exh. 2). The Notice indicates that Defendant, who was deported on August 21, 1997, by an order dated August 12, 1996, apparently reentered the United States on an unknown date and at an unknown location and that the order of deportation was being reinstated. (Tr. at 32; Def. Exh. 2). The usual procedure following the entry of a such an order is for ICE to determine available flights to remove the person and to contact that person's consulate to seek electronic travel documents, which depending on the consulate can require one to two weeks. The time of year may also impact the processing time. (Tr. at 36, 39-40). The parties stipulated:

> There are no documents, electronically stored information, or objects in the files of the United States Immigration and Customs Enforcement

3

responsive to Defendant's request for "proof of any and all efforts to deport the Defendant to Honduras after November 13, 2014."

[Doc. 26 (citation omitted)].

A federal grand jury sitting in the Northern District of Georgia indicted Defendant on December 22, 2014, for a violation of 8 U.S.C. §§ 1326(a) and (b)(2), that is, for being an alien, who having been previously deported and removed, was found within the United States without having the requisite permission to reenter. [Doc. 1]. There is no evidence in the record that Defendant was facing federal criminal charges for this offense prior to the return of the indictment.

Additional facts will be set forth as necessary during discussion of Defendant's motion to dismiss.

**II.  Discussion**

The Speedy Trial Act, 18 U.S.C. § 3161(b), provides in pertinent part that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." And 18 U.S.C. § 3162(a)(1) provides in pertinent part that "[i]f, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or

4

information is filed within the time limit required by section 3161(b) . . ., such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." Defendant contends that this provision of the Speedy Trial Act was violated because he was not indicted within thirty days of November 13, 2014, when he was taken into ICE custody and the reinstatement of the order of deportation was executed.[2] [Doc. 27 at 3-7]. In support of his motion, while acknowledging that an ICE detention is usually considered to be civil custody not triggering the Speedy Trial clock, he argues that the "ruse exception" to this rule applies because "ICE <u>did nothing to further Defendant's deportation</u> after entering the order of removal." [<u>Id.</u> at 4 (emphasis in original)]. And, absent any other evidence in this record, Defendant "speculates that once the order of removal was reinstated on November 13, 2014, [ICE] leisurely

---

[2]To the extent Defendant appears to argue that he was in federal custody as of his arrest on November 10, 2014, by Gwinnett County officers for traffic offenses arising out of the safety checkpoint [Doc. 27 at 3], that argument is a non-starter. Before November 13, 2014, Defendant was in the custody of Gwinnett County on charges totally unrelated to the immigration offense for which he was indicted. The Speedy Trial Act is not triggered by his unrelated custody in Gwinnett County. <u>See</u> <u>United States v. Shahryar,</u> 719 F.2d 1522, 1524 (11th Cir. 1983) ("'Since the Act applies only to federal prosecutions it is only a *federal* arrest, not a state arrest, which will trigger the commencement of the time limits set in the Act.'") (quoting <u>United States v. Iaquinta,</u> 674 F.2d 260, 264 (4th Cir. 1982)) (emphasis in original). The focus of Defendant's argument is in fact on the period of time that he was in ICE custody. [Doc. 27 at 3-7].

presented the case to the U.S. Attorney's office for criminal prosecution without regard to the dictates of the 30 day limit of the Speedy Trial Act." [Id. at 6].[3] Defendant's arguments are unpersuasive.

In United States v. Noel, 231 F.3d 833 (11th Cir. 2000), the Eleventh Circuit Court of Appeals joined other circuits holding that because ICE "detentions preceding deportation are civil in nature, they do not trigger the Speedy Trial Act." Id. at 836; and see United States v. Drummond, 240 F.3d 1333, 1335-36 (11th Cir. 2001) (same). Citing to Noel, the court in Drummond stated, however, that a "limited exception" to this rule applied "when deportations are used by the government as 'mere ruses to detain a defendant for later criminal prosecution.'" 240 F.3d at 1336 (quoting, *inter alia*, Noel, 231 F.3d at 836). "To invoke this exception, . . . [the court] . . . placed the burden on the detainee to establish that the 'primary or exclusive purpose of the civil detention was to hold him for future prosecution.'" Id. (citation omitted). As noted by the Fifth Circuit Court of Appeals, "[t]his 'ruse exception' is 'an effective way of protecting against the possibility of collusion between federal criminal authorities and

---

[3]Defendant opines that, due to the work product doctrine, he was unable to obtain any further evidence to support his claim [Id.]; however, as far as the court is aware, Defendant made no attempt to obtain the testimony of any investigating officer or agent regarding contact with the U.S. Attorney, and Defendant did not seek this court's assistance in obtaining any such "evidence."

6

civil or state officials.'" United States v. Molina, 535 Fed. Appx. 417, 418-19 (5th Cir. 2013) (quotation omitted) (noting that the defendant did not present any evidence of collusion between the U.S. Attorney's Office and immigration authorities to delay the defendant's deportation); United States v. Pasillas-Castanon, 525 F.3d 994, 998 (10th Cir. 2008) ("Without evidence of wrongful collusion for [the primary or exclusive purpose of detaining the defendant for criminal prosecution], the exception does not apply").

In this case, Defendant was detained based on the reinstated deportation order for thirty-nine days before the indictment was returned. (Tr. at 31-33; Def. Ex. 2) [Doc. 1]. Defendant presented no evidence of any interaction between prosecuting authorities and immigration officials regarding processing Defendant's deportation or removal or establishing that Defendant's deportation or removal was actually delayed pending the return of the indictment. Defendant relies in totality on the lack of any record that, after the reinstatement of the order of deportation on November 13, 2014, actions were taken by ICE to process Defendant for deportation or removal. [Doc. 27 at 3-7]. However, that fact - in conjunction with his "speculation" as to what might have been occurring during the thirty-nine days - is simply insufficient to carry his

burden of proof "that the 'primary or exclusive purpose of the civil detention was to hold him for future prosecution.'" Drummond, 240 F.3d at 1336 (citation omitted).

First, the period of the delay, thirty-nine days, is too short to support an inference of collusion. See, e.g., Molina, 535 Fed. Appx. at 419 ("the 54-day delay between the Molinas' immigration arrests and their criminal indictments does not support an inference of collusion"). And the period of detention in this case, only thirty-nine days, otherwise does not support application of the "ruse exception."[4] See United States v. Dyer, 325 F.3d 464, 468-69 (3rd Cir. 2003) (noting, in a case where the indictment was returned within forty-one days of the civil detention, that the "Speedy Trial Act's time limit is not triggered by the fact that the [ICE] is conducting a reasonable investigation in order to decide whether the reentrant should be prosecuted or deported without prosecution"); United States v. Garcia-Martinez, 254 F.3d 16, 17, 19-20 (1st Cir. 2001) (in absence of proof of collusion, the facts that the defendant was arrested by ICE authorities on December 28, 1998, that, after obtaining the defendant's A-File, the ICE officer contacted and met with the prosecutor between January 13 and

---

[4]This conclusion is reinforced by the fact that "8 U.S.C. § 1226(c)(1)(B) mandates that the Government detain aggravated felons . . . pending . . . removal." United States v. Rodriguez-Amaya, 521 F.3d 437, 442 (4th Cir. 2008); and see Pasillas-Castanon, 525 F.3d at 998 ("if the detaining authorities have a lawful basis for their civil detention, a defendant is not entitled to invoke the exception").

8

January 19, 1999, that a criminal complaint was filed on January 25, 1999, and that the defendant was indicted on February 17, 1999, did not trigger application of the Speedy Trial Act, at least, prior to the filing of the criminal complaint; the court found that the record refutes the defendant's claim that ICE never intended to deport him but held him only for prosecution).

It is obvious that ICE made a referral to the U.S. Attorney's Office regarding Defendant Diaz-Zuniga's case - how else could the information have been available for the instant indictment to be sought and returned. But that fact does not support Defendant's claim that he was held primarily or exclusively for prosecution or that the authorities colluded to delay his deportation or removal to allow solely for prosecution. See Molina, 535 Fed. Appx. at 419 (noting that "'[t]he fact that federal criminal authorities might have known about [the alien's] detention . . . does not necessarily support a conclusion that they colluded with . . . [ICE] to detain [the alien]'") (citation omitted); Dyer, 325 F.3d at 469 ("'the fact that federal [criminal law enforcement] officials are aware of, and perhaps slightly involved in, the deportation proceedings . . . would not establish, as a matter of law, the requisite collusion'") (citation omitted).[5]

---

[5]The court finds it highly doubtful, even if INS had taken additional steps to process Defendant for deportation or removal, that he would have left the United States prior to the return of the indictment. As noted at the evidentiary hearing, implementing

9

The district court cases cited by Defendant, United States v. Franco-Bonilla, 2005 WL 3116058 (M.D. Tenn. November 17, 2005), and United States v. Vasquez-Escobar, 30 F. Supp. 2d 1364 (M.D. Fla. 1998), are not persuasive authority and are inapposite to the case before this court. In Franco-Bonilla, the court focused on the facts, after the order of deportation was reinstated on April 1, 2005, (1) that on April 4, 2005, the ICE agent prepared a report of investigation regarding the defendant indicating that the defendant had violated 8 U.S.C. § 1326 and stating that the investigation was continuing, (2) that the agent "subsequently notified" the prosecuting authorities, and (3) that the defendant was indicted on May 25, 2005. Id., at *2. The court, finding no evidence of collusion between ICE and prosecuting authorities, nonetheless found (without explanation) that the Government could have deported the defendant on April 1, 2005, but did not initiate travel authorization until June 10, 2005, that fifty-one days elapsed from April 4th until his May 25th indictment, and that no proof explained or justified that delay. Id., at *3. Accordingly, the court concluded "that *absent* such proof, the preponderance of the evidence is that the primary purpose

---

the order requires coordinating travel arrangements and obtaining from Defendant's consulate travel documents, the timing of which depends on the time of year. (Tr. at 36, 39-40). Defendant's ICE custody on November 13, 2014, occurred just prior to the Thanksgiving holiday and the beginning of the Christmas holiday season.

10

of [the defendant's] detention was the filing of the criminal charge in this action." <u>Id.</u> (emphasis added). Although the court had stated that the burden was on the defendant to establish that the "ruse exception" applied, in actuality, the court, in the absence of any evidence of collusion and any explanation for the delay, placed the burden on the Government to justify what had occurred. However, a lack of evidence explaining the pre-indictment delay does not satisfy a defendant's burden in the Eleventh Circuit, especially in a case where the delay is as short as that in the instant case.

And in <u>Vasquez-Escobar</u>, the court found that "the government admits that it was not holding [the defendant] to effectuate his deportation under § 241(a)(5). Instead, it held him after December, 1997, for illegally reentering the United States, specifically to provide the government the time and evidence necessary to establish his 'guilt beyond a reasonable doubt' for an identical criminal charge of illegally reentering the United States under 8 U.S.C. § 1326(a)." 30 F. Supp. 2d at 1367. There is no such direct proof in the case before the court. As important, the period of the delay, five months pending the return of the indictment in <u>Vasquez-Escobar</u>, is significantly longer than the thirty-nine day delay in this case. The decision in <u>Vasquez-Escobar</u> is, likewise, not persuasive authority.

11

For the foregoing reasons, the court finds that Defendant has not "establish[ed] that the 'primary or exclusive purpose of [his] civil detention was to hold him for future prosecution.'" <u>Drummond</u>, 240 F.3d at 1336 (citation omitted). Accordingly, Defendant has not proven that the Government violated the Speedy Trial Act in bringing the indictment in this case.

### III. Conclusion

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motion [Doc. 18] to suppress evidence be **DENIED** as **MOOT** and that Defendant's motion [Doc. 19] to dismiss the indictment be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

**SO ORDERED AND RECOMMENDED** this 11th day of August, 2015.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE